Curia,,per Evans, J.
There is little difficulty in this case, except on the question, how the lines are to be closed from the black jack corner at B, and B oak at F. In deciding this question, it must be borne in mind, that the Nelson plat calls for the Rogers grant, as a boundary, and not only represents that the Rogers grant lies on that side of it, but calls for the same course and a hickory station, old mark, near a branch, which on resurvey is found to be the corner of the Rogers grant. Then, according to any *373 principles upon which locations are made, the line from B must run along the line of the Rogers grant to the hickory at A. In this way, the course, and the marked trees, are both preserved. But the boundary terminates at the hickory station, and the whole controversy between the parties is beyond this point. I take the rule to be this: the line is to be run according to the boundary, and the boundary is to be observed, although the course be different. In the case of Atkinson v. Anderson, 3 M'C., 223, it was held, that where a junior grant called for a senior as a boundary, the boundary should be followed, although it was a zigzag, instead of a straight line. In Martin v. Simpson, Harp. 455, it was decided that, where the boundary called for extends only along a part of the line, then the boundary was to be observed as far as it went, and the balance of the line was to be run according to the course called for on the plat. According to these principles, these lines were correctly run by running the line from B to the station at A, and thence continuing the true course, to X, where it intersected the line run along the course called for from F. In this way, the form of the plat is preserved, the course is preserved, and the marked trees are preserved. To locate the Nelson grant as contended for by the defendants counsel,'so as to include the triangle, A F G, (the subject of dispute,) would lead to a violation of the established principles of location. It can be done only by one of two ways — 1st. By running a .straight line from B to- G, the point where the distance from F is supposed to terminate. The effect of this would be, to run through the Rogers’ grant, to depart from the course, and wholly to disregard the marked trees, for the single purpose of preserving the length of the line F G. 2d. At the station A, to change the course of the line, and run from A to G, the effect of which would be, to add a sharp cornered triangle to the form of the original plat, and to convert the straight line, A X, into the two lines, A B and A G, which are nearly at right angles to each other: This cannot be done, unless the pine corner, called for in the plat, had been found. In which case, it is conceded, the course must yield to the marked trees. If this corner had been found at G, or at any other point on the line F G, then the course would be changed at A, so as to connect the hickory station with *374 the corner by a straight line. But as the pine corner is not found, the lines can be closed in no other way than by running lines along the courses until they intersect.
The defendant’s counsel seemed to entertain a notion that, because the Nelson grant called for the Rogers grant as the boundary along the whole line on that side, he had a right to follow the boundaries of the Nelson grant to any point where the line from F would intersect. This would be true, if the pine corner was found in the line A G, or the line from A ran in such direction as still to leave the Rogers land a boundary on the same side. But this is not the case. If the course is changed at A, and the line A G be adopted instead of the line A X, then the Rogers grant becomes a boundary on two sides, instead of one. The only remaining question is, whether the plaintiff had such possession as enabled him to bring an action of trespass quare clausum fregit. The motion for a nonsuit on this ground was made before the plaintiff adduced his title, and should have been granted, unless the plaintiff had such possession as- would enable him to maintain this action. The facts were these: — The plaintiff was the owner of a tract of land, granted to one Fennell, which covered the land in dispute, unless it was included in the defendant’s > older grant. He purchased it at sheriff’s sale, as the property of M’Rory, who had- run away. After M’Rory ran away, one Allen got possession, but without any title. Before the plaintiff purchased, the defendant sued Allen in an action of trespass to try the title, which was pending when the sheriff sold. The plaintiff was about to interpose his title, to protect Allen against the defendant’s action, but desisted on the defendant’s promise that his recovery against Allen should not affect the plaintiff’s right. Allen abandoned the possession, and on the trial of the case, M’llwain recovered against him. A writ of possession issued, and the sheriff went with it, and finding no person there, he told M’llwain he put him in possession. On the Fennell grant there was a large plantation of cleared land enclosed within a fence. The land in dispute was within the same enclosure. The plaintiff’s house was within the same common fence, and at the time the sheriff went on the land with M’llwain, the plaintiff had the same possession of this land that *375 he had of the rest of the cleared land. After M’llwain.was thus put into possession, 'without making any fence around it, so as to detach it from the rest of the field, he planted it in corn. The plaintiff ploughed it up and planted corn himself. This was ploughed up by defendant, who again planted the land. This was ploughed up a second time by the plaintiff, and the land planted and cultivated until August, when the defendant entered in the night time, as was alleged, and cut down the corn when it was fully grown. For this trespass the action was brought, and the question was — could trespass quare clausum fregit be maintained without proof of title ? This form of action is used for a violation of the plaintiff’s possession; if he be in the actual occupancy he can maintain the action without title. If his possession be constructive, and not actual, he cannot maintain it without proof of title. I think in this case there can be no question that the plaintiff was in the actual possession of the land at the time the sheriff put M’llwain into possession. I do not think the plaintiff’s possession was at all affected by that act, because, in the first place, there was an agreement to the contrary; and, secondly, because nothing was done to oust the plaintiff’s possession. In the execution of the writ of possession, the sheriff should put the plaintiff into full possession; and to do this, he may put out not only the defendant, but all others who. are in. This he is authorized to do by his writ; but the title of no person is in any way affected, except that of the defendant, and those who hold under him. I think, however, it is unnecessary to discuss this part of the subject. There can be no doubt that at the time the corn was cut down and destroyed in August, the plaintiff was in the actual occupancy of the land, and that he was so before the defendant acquired any possession. He had, therefore, the oldest and the present possession when the trespass was committed, and could, therefore, maintain this action.
Wright> for the motion.
The motion is therefore dismissed.
Richardson, O’Neall, Earle and Butler, Justices, concurred